Okay, well we are fortunate to have with us a person known to all of you, Justice Breyer is joining us on the bench. This is a day nearly three decades in the making because the court that we're all in, the father of that court, the idea of building this court was Justice Breyer. He has been otherwise occupied and so hasn't had a chance to sit in the court, but today is the first time he'll be sitting in the courtroom that it was his idea to create. So it's a wonderful occasion for the court and we welcome you to the bench. Justice Breyer Thank you very much. Thank you for inviting me, David, and the First Circuit. Just walking around this morning looking at the harbor from the court, I thought, well, it's old home week. Here we are. And terribly nice, terribly nice. I'm sure I will find it very interesting. And it's a privilege to sit here. Thank you. Welcome. Judge Kedem Okay. Thank you, Judge. Thank you, Justice Breyer. Thank you, Judge Cayetta. At this time, I'll call the first case, number 24-1563, United States v. Alan Powell-Parrott. At this time, would counsel for the appellant please step up to the podium and introduce himself on the record to begin? Alan Powell-Parrott Curfusion for the appellant, Alan Powell-Parrott. You can start. Judge Kedem Thank you, Your Honor. May I please have two minutes of rebuttal time? Alan Powell-Parrott You may. Judge Kedem Thank you, Judge. Good morning, Your Honors, and may it please the Court. While the United States Supreme Court 50 years ago this year tells that an accused need not know that the person that he is assaulting is a federal law enforcement officer in order to sustain a conviction under Section 111, that court did leave open the possibility that an accused's state of mind or the lack of knowledge about a law enforcement officer's identity or his purpose could negate his rail.    And that's the case we have today. Mr. Parrott was at his home in Hancock County, and three law enforcement officers, FBI agents that he learned later, showed up at his doorstep. They engaged in an hour and a half long unofficial conversation and had to move to the back of the residence eventually, where the subject matter turned. And eventually, because of the subject matter turning, Mr. Parrott decided he wanted to end the conversation. He directed law enforcement to his attorney and attempted to close the door. Law enforcement said that they were not there to serve him any legal paperwork and proceeded to not allow Mr. Parrott in. Justice Breyer You have two different instructional challenges. The first is the mistake of fact instruction. That, as I understand, is preserved. Alan Powell-Parrott Yes, Your Honor. Justice Breyer The issue, can you just walk us through what your reason for thinking that there is a problem with the denial of the instruction you requested? Alan Powell-Parrott On the mistake of fact instruction, Your Honor, the court denied the mistake of fact instruction because it kind of just summarily stated it's a general intent crime. The Supreme Court's held that. But because of that, I'm not issuing a mistake of fact instruction. Regardless of whether it's a general intent crime or a specific intent crime, as the FIOLA court noted, an honest mistake of fact about a law enforcement's identity or their purpose, their authority, can negate mens rea such that Justice Breyer When you say can, in and of itself or is it just, as I read FIOLA, I thought it said that there are circumstances in which that mistake of fact could negate intent, which is different than saying simply the mistake of fact can negate the intent. Alan Powell-Parrott I agree, Your Honor. I think it depends on the circumstances of a given case. And I think this case is one of those rare, it's a rare one in that Mr. Parrott knew that these three people at his doorstep were FBI agents, were not contending otherwise. He knew that. The issue is, after an hour and a half long conversation, after being told I don't have any legal paperwork to serve you, and I can't think of anything better to point out as legal paperwork than a lawfully executed search warrant by Chief Magistrate Divison. That mistake of fact about their authority in trying to enter his home, that's the type of circumstance that I believe that the FIOLA court was considering. Judge Goldberg Well, presumably that's not enough to just justify an assault of them or kicking them. So is there additional facts that then support the notion that because of that mistake of fact, the actions he took in response to them would negate criminal intent? Well, as far as factual records are concerned, I would refer to Mr. Parrott's testimony. Mr. Parrott was, on cross-examination, was consistently asked questions about, did you believe that they were there in their official capacity? No, but I'm saying independent of, so they weren't there in their capacity. Okay. You asked him to leave. You can't just punch him in the face, presumably. So what else happened that would justify the use of physical force by him? Mr. Parrott talked about law enforcement entering his home. He talked about, he said, six hands were entering his home, and in that he used with the flat of his foot, he pushed the law enforcement officer to repel them from his home. And so that's where the trial counsel referred to this unlawful use of force. As far as law enforcement entering their home without authority to do so, without providing notice and authority, such as the statute that, there was another 183109 about how to, law enforcement's ability to break into a home without, into a home. And so that was also, we attempted to get a jury instruction on that, and it was denied. So we believe that instruction on the law, coupled with the mistake of fact considerations as made in Fiola, that should have been brought to the jury, and the jury should have decided whether Mr. Parrott knew, whether Mr. Parrott had an honest mistake of fact about whether they were there in their official capacity and had authority to enter his home. What do you make, what do you make of the testimony? He was asked, it's correct though that you only tried to fully close the door after they brought up the subject matter of the search warrant, correct? Answered by your client, yes, you are correct, yes. Your Honor, I believe shortly after there, it's clarified that that wasn't the case, that they said we're not there to serve any legal people, and I would have to pull back the transcript on this, Your Honor. I believe trial counsel asked Mr. Parrott a question and he said yes, and he kind of walked him through it because I think it was a mistake to answer. I believe that's the context, I'd have to look back at the transcript. What does subject of the search warrant mean? Is that the search warrant, or is that some topic related to the search warrant? It's not a search warrant, it's a change in subject matter. You know, they're having this conversation about all kinds of different things for an hour and a half, and then it turns into, dramatically turns into this different subject matter, which was the subject matter of the warrant. Which is what? What is that subject matter? Your Honor, I'm not sure that that was in the record, and so I don't want to add anything to the record at this time. Well, we don't know what it was. I mean, I thought when I read this, the viola, and there's a case in the Seventh Circuit, I think. Look, you can't, say, punch a law enforcement officer in the face, even if he's in your house. You can't do it. At least, you don't have to know he's a law enforcement officer. But sometimes, maybe a person in your house will act in such a way you think he's a thief, or you think that he is a murderer, and you think you're, my goodness, I better get him out of here fast. Well, that didn't happen here, did it? No, that's not true. All right, well then, if you're looking at that exception in viola, it seemed to me, possibly, that that's what it's referring to. It's not referring to just all you didn't, that he didn't tell the police officer all the facts about the search warrant. He didn't say, I have a search warrant for you, and this is, and he's supposed to do that. But you know, there are a lot of technical things they have to do. So if you're going to categorize this as, well, the police made a technical mistake here, but it didn't make the victim of their technical mistake your client. It didn't make him think that they were real baddies. And compare that with a case where the mistake is such that he thinks, oh, God, I better get this guy out of here because he's going to really hurt me. I mean, which side of the line is that? Your Honor, in this case, I don't think it was a technical mistake, respectfully. This was a situation where law enforcement materially misrepresented why they were there. Putting aside, let's say that's true. You say that there were hands coming in. Is the record, are we on summary judgment or are we on the trial? Yes. And so is there evidence that he was touched by the officers? Yes, Your Honor. And so the claim is that the pushing in that instance was because he was being grabbed? And that people were unlawfully entering his home. So the force that he's using then is in response to the physical touching by them of him. Yes, Your Honor. And so that's the special circumstance. Even though they don't think they're murderers or something like that, you have to be able to say, if this person has no business being here, they can't put their hands on me, and so I can push them off. That's the idea. May I answer the question, Your Honor? Yes. That in conjunction with the other evidence in the record about them misrepresenting why they were there, saying we are not here to serve any legal paperwork, entering the door after an hour and a half long conversation, the jury was honed in on this issue, too. They came back hours later and deliberating and said, look, can an FBI agent do this? Can they enter the home in this way? No, they're wrong. They're wrong. I take that as your point. I accept that for the sake of argument. They're wrong. But are they putting your client in a position where he thinks physical force against these people, who are wrong, is something he really should do, lest people be hurt or lest something serious happen to them? That's what I didn't really see here yet. Okay, Your Honor. I think that it reveals that he was able to exert a reasonable element of resistance in response to that unlawful entry. Can you? That's what I'm saying. What is a reasonable use of force where the policeman did not tell him what he should have done, I guess. I think that's an excellent question for the jury, Your Honor. Excellent question for the jury. But can we say if it isn't shown to the jury that possibly the judges have something to say? I contend otherwise, but yes, Your Honor. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the government please introduce himself on the record to begin? Good morning. May it please the court, Brian Kleinbord for the government. Your Honors, the district court properly instructed the jury in this case, and Mr. Perot's conviction for assaulting a law enforcement officer should be affirmed. The Supreme Court has said that the statute at issue, assault on a law enforcement officer, was enacted to give maximum protection to federal officers and to create the highest possible degree of certainty to those officers working in the performance of their duties, that they would not be assaulted. In this case, the court properly instructed the jury in accordance with controlling legal principles, that the elements of this general intent crime were that the defendant had to intend to commit assault, two, against a federal law enforcement officer acting within the scope of their official duties. So what's your position? Take this scenario. Knock at my door. I open it up. There's a federal law enforcement officer there. Clearly I know he's an officer. He tells me he's an officer. I say, have you got a warrant? He says, no. I don't like to use warrants. I didn't even try to get one. But I just want to search where I want to search. And he puts his hand on the door and starts talking. Do I have to let him in my house, or can I use reasonable force to stop him? You were not entitled to use force against that officer. So I have to let him come in, even though it's clear to me he has no warrant and has no lawful right to come into the house. What a person in that circumstance can't, there may be other avenues of redress in that situation. You could call police. Once the person knows that they're dealing with a federal law enforcement officer, that's the intent of the statute. They're not permitted to commit an assault against them. There may be other avenues for that person to seek redress. But it's not, as in this case, kicking a female FBI agent in the stomach. That's just simply not, that's what Congress intended when they enacted this statute. And that's what the cases that since FIOLA have said. Is the record that the officers were touching him at the time he used his foot to kick them away? So, Your Honor, the testimony was that once the subject of the search warrant came up, Mr. Perot's demeanor changed dramatically. He started yelling and he attempted to slam the door on the agents. They tried to keep the door open and they said, we're not going to let you do that. It's a safety issue. We can't let you do that. And as they're reaching in to keep the door from closing, I think they grabbed Mr. Perot's lapel. So is he allowed to remove their hand from the lapel? No, because their testimony was they couldn't let him close the door on them because that creates a safety issue for them. They have a search warrant. I mean, there's no question. But he doesn't know. From his perspective, we're trying to figure out his intent. And the question is whether his lack of knowledge about their lawful right to be there in light of all that's transpired and them grabbing him negates an unlawful intent if what he's trying to do is extricate himself from them when he has no reason to believe they have any reason to put hands on them. Well, he knows while they're there. He knows they're acting within the scope of their duties. He doesn't have a right to put hands on them at that point. What do we do? Is the government's position then that for the purpose of language in FIOLA means only to distinguish between being on a frolic and not being there for a lawful purpose rather than for not a lawful purpose? So if you're not there for a lawful purpose, but you're doing police business unlawfully, FIOLA has to think that doesn't matter. That's correct, Your Honor. That's the government's position. What supports that view? Nothing in FIOLA says that. But I would say to this court's decision in the United States v. Troy, which is a 2009 decision. It's not in my brief, but it is a case that Judge Walker relied on in the district court. And that was a case involving an assault on an agent from the Customs Bureau. And it was a sufficiency of the evidence case in front of this court. And the issue was, did the government prove that the officer was working in the performance of his or her official duties? And this court said that phrase, whether an officer is engaged in his duties, does not turn on whether the law being enforced is constitutional. But that's a different question than this question. There's not even a contention, I think, by the other side that he wasn't operating in his duties. The question is whether when those duties don't include, and reasonably understood not to include being in my house and putting your hands on me, can I push the hands off in that situation? And I guess your position is no. No. My position, if there's a line to be drawn, is the officer there purely on a personal frolic? There's no evidence in this case to support that. Well, I'm not seeing that that's quite the line you're drawing. If he reasonably believed that they were there to beat him up and they started to do so, couldn't he use reasonable force? Well, if the police were using excessive force, I think that might be a different... Well, if he did not know that they had a right to hit him. Well, I mean, those certainly aren't the facts of this case. Right. But if you're saying that he has a right to use self-defense in the event he perceives them to be using unlawful force that's outside their ability, then it seems to me you're drawing a line between self-defense of the body and self-defense of the property, the home. Your Honor, I think for purposes of this case where the issue is, did the district court properly instruct the jury? Well, the instruction, on mistake of fact, its reason was that it's a general intent crime. It's just a general intent crime. That's just not a good answer, even on the frolic example. That background would encompass even the frolic example, right? To be fair, Your Honor, I don't think Judge Walker's answer on how to instruct the jury was simply based on the statute being a general intent crime. There were multiple charge conferences in this case. There were a series of email correspondence back and forth with counsel to try to get this right. The court canvassed the entire scope of the law from FIOLA through today, that's 50 years. Didn't find a single case supporting the defendant's mistake of fact instruction. Didn't find a single pattern jury instruction that supported the mistake of fact instruction in these circumstances where the defendant knows that he's dealing with a federal law enforcement officer. All right, so what happens? This is not quite within the precedence of any of them. I think you're in your house and you have one of these windows you can see out of and there's a person who doesn't look like a policeman. He just looks like an ordinary private person and he comes up to your door and he tries to get into your house. Can you hit him like this? Yes, if the person doesn't know that it's a law enforcement officer. No, he doesn't know it's a law enforcement officer. He's just come in and he's trying to get in your house and you have a right to just hit him like that. You have a right to defend your home and yourself. Does that include hitting people? Does it include kicking him in the stomach? Does it include really punching him right in the face? How does it go? Is it something called excessive force? That would be controlled by ordinary principles. Yes, it would. I'm saying what is the ordinary principle? If the person reasonably believes that they need to protect their home or their person. He doesn't have to protect it. The guy says, I'd like to come into your house, please. And you say, I don't want you to. And then he opens the door and starts to come in. Can you do what this man did? Can you go and kick him in the stomach or hit him? I think ordinary self-defense or defense of home. And you're not making an argument here, at least I didn't understand, that the nature of the force used here would have been impermissible, even as against somebody they didn't know was an officer. You're saying that Mr. Perot's use of the quantum of force used by Mr. Perot here. I don't understand the government to be saying that's a quantum of force that would have been impermissible, even as against somebody they didn't know was an officer. So watch. I mean, maybe this is right. If he had been ordinary Joe, you could have done it. You could have hit him in whatever he did here, whatever the physical force was. So how is this different? Well, because the policeman wasn't acting according to the rules. He didn't tell them, whatever you're supposed to tell them when you issue a search warrant, he didn't. But there is a thing on the government side. He knew he was a policeman. He knew he was a policeman. And then you add, and he didn't hurt him that badly, or he did kick her in the stomach, or this was on the edge here of what you could do or not do if he was a private citizen. How do you want to do that? So he knew he was a policeman. Now, that probably matters. Look at the cases. It doesn't matter. Yes, but this is a different case. And so how do I deal with that? Your Honor, I think it does matter. I think it matters a great deal that he knew that she was an FBI agent. She kicked him in the stomach. He kicked her in the stomach. He admits that. He was not permitted to use that force once he knew that he was dealing with the law enforcement. Can I ask one last question? The way this case is coming up to us, it's not a sufficiency challenge. It's an instructional challenge. Yes. So he asked for an instruction. If the instruction tracked Fiola, then one argument would be, it doesn't matter it was harmless error because he couldn't have done this anyway on all the facts. That's not been the argument you've made to us, if I'm understanding it. The argument you've made to us, like the argument the district court gave us, he was not entitled to the instruction because it was a general intent crime. So if that's wrong, why wouldn't we just say, well, then there's no argument being made as to why the instruction shouldn't have been given, then the jury, had they been instructed, we'd find out what the jury did with that instruction. Maybe they'd rule for you. Maybe they wouldn't. But there's not an argument to us, unless I'm mistaken, that wouldn't this be on harmless error, beyond a reasonable doubt harmless error? You haven't made that argument to us. No, Your Honor. So you're just standing or falling on whether the instruction should have been given or not. And the sole ground is that this is a general intent crime, so it wasn't entitled to the instruction. Well, no, that's not the sole argument in favor. So I guess I would take issue, Your Honor, with this instruction that was requested is not covered by FIOLA. That's the government's position. And what is it about it that's not right, because of the reference to reason or what? No, because FIOLA doesn't stand for the proposition where the defendant knows that he's dealing with a law enforcement officer, but isn't sure if the officer is acting properly, that he can still... No, but FIOLA suggests it's a factor that in some circumstances may be relevant. I don't see anything in the instruction that's inconsistent with that notion. Well, I think the best answer to that, Your Honor, is that FIOLA's been on the books for 50 years. There are many cases dealing with a mistake-of-fact instruction in the context of whether the defendant knew that the law enforcement officer was in fact a law enforcement officer, or whether they were a private citizen, they were undercover, they were in an unmarked car. There is no case, there is no jury instruction given in a case like this where the defendant knows that he's dealing with a law enforcement officer and is making yet the argument that he didn't know what the person was doing. You can't assault someone in those circumstances. Thank you. Thank you, Counsel. At this time, would Counsel for the Appellant please reintroduce himself on the record? He has a two-minute rebuttal. Kurt Peterson for the Appellant, Alan Perreault. Your Honors, I think, so looking at, leaving where we just were about these undercover cases where the defendant doesn't know that the agents, or that there are agents in the first place, I think there's an important distinction between those cases and this case. In those cases, the defendant's conduct at the outset, whether it be a narcotics ripoff in FIOLA or somebody trying to trespass in U.S. Borders and Customs, that conduct at the outset is wrongful. And FIOLA talked about that. They said that this holding would not be a snare for the unsuspecting and that people whose conduct was wrongful from the outset wouldn't be able to use this language from FIOLA, where in this case, Mr. Perreault's conduct from the outset was never wrongful. He's at his home. He's engaged in an hour-and-a-half-long unofficial conversation, told there's not going to be any legal paperwork. And then, you know, the mistake of fact being their authority and their purpose in trying to enter his home without a search warrant, that's the distinction that I think this Court should recognize in this case, is that there's a difference between wrongful conduct from the outset and reactionary conduct that is justified. It seems to me the issue boils down to here is, do we want a form of violence to be brought to bear when the homeowner knows that they're officers? The choice is resist with force or, as Judge Barrett suggested, call the police or complain about it after the fact. Just as a matter of policy, is it good to say that any time the homeowner thinks there's a defect in the warrant, and if that's a reasonable belief, he can beat up the police officers that are coming into the house? Absolutely not. And how is this different? They did have a warrant. He knew they were police officers. He thought they didn't have a warrant, or so a jury could find. So why should his recourse be force rather than some other recourse? Your Honor, may I answer the question? That person was provided notice of his authority to enter the home with a search warrant. And any issues you have about probable cause or a defect in the warrant is something that I agree as a matter of policy can't be resisted with force at the time. But when three FBI agents are at your door and you have a mistake of fact about their unofficial status there, or whether they're entering there without a warrant when you're told, we don't have any legal paperwork to serve you. I think that's where FIOLA and this case line up. That is a big problem. Why? Because the police actually operate under huge codes of rules. And they can fairly easily make a mistake as to one, good faith or not. And if we were to hold with you, we're saying every time they make a mistake and they get to somebody's house, the homeowner can just sock them over the head. Now, it doesn't seem to me a very good idea to promote violence in these confrontational situations. That, I think, was the question that Judge Gallardo was asking. And I'm not totally certain I've heard the answer. I think there's a line between a technical issue with the way in which law enforcement executes a search warrant and law enforcement's bad faith or provocative conduct. And that's in a case law, and that's the reason I used that language. I had thought you were suggesting, but maybe you're not suggesting it, that whether they were in bad faith or not, you cannot just sock them in the face. But when they grab you as they're trying to enter the home, you can use reasonable force to extricate yourself from them, which is a rather different case than the question of whether if they've made a mistake, you can hit them. That is what I'm contending, Your Honor, and I think that issue should have gone to the jury. Okay, thank you. One thing on that, didn't the judge instruct the jury that it is a defense to the charge if the defendant did not know he's a federal officer, two, that the defendant reasonably believed that use of force was necessary to defend himself against the use of unlawful force? Yes, Your Honor. So wouldn't that cover Judge Barron's scenario? I don't believe it would, Your Honor, because the inquiry ends at the identity of law enforcement. This is the point where he emphasized the or, the disjunctive. So if the satisfaction of one of those three things insulates the police officer and requires the conviction. Exactly, Your Honor, and the fact that their federal law enforcement officers forecloses any relief for any consideration of the OLA decision. Thank you. Thank you, counsel. That concludes argument in this case.